**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**KENNETH MASON,**

  **Plaintiff,**

**v.**                                                    **Civil Action No. 2:10cv55**
                                                         **(Judge Maxwell)**

**WEXFORD HEALTH SOURCES,**
**ADRIAN HOKE, Warden,**
**TRISTEN TENNEY, Med. Adm.,**
**NURSES JANE DOE 1 through 8**

  **Defendants.**

## REPORT AND RECOMMENDATION

### I.  Procedural History

The *pro se* plaintiff initiated this civil rights action on April 28, 2010.  In the complaint, the plaintiff asserts that the defendants were deliberately indifferent to his serious medical needs. On May 11, 2010, an Order was entered granting the plaintiff leave to proceed *in forma pauperis*. On May 18, 2010, the plaintiff paid his required initial partial filing fee.  On June 1, 2010, the plaintiff filed an amended complaint.

On June 2, 2010, the undersigned conducted a preliminary review of the complaint and determined that summary dismissal was not appropriate.   Accordingly, an Order to Answer was entered, and  Summonses were issued for the defendants. In addition, the plaintiff was afforded 120 days to provide the Court with the names of the eight Jane Does.  To date, he has failed to do.

On June 24, 2010, Warden Hoke filed a Motion to Dismiss with a Memorandum in support thereof.  On July 1, 2010, defendant Tristan Tenney filed a Motion to Dismiss with a Memorandum in support thereof. Because the plaintiff is proceeding without counsel in this case, the Court issued

<u>Roseboro</u> Notices on June 30, 2010, and July 2, 2010, advising the plaintiff of his right to file a response to the defendants' motions. On August 2, 2010, the plaintiff filed a response, and on August 11, 2010, the defendants filed replies. On September 20, 2010, Wexford Health Sources ("Wexford") filed a Motion to Dismiss with a supporting memorandum. A Roseboro Notice was issued on September 22, 2010, the plaintiff filed a response on September 27, 2010, and the defendant filed a reply on October 6, 2010. This case is therefore before the undersigned for a Report and Recommendation on the Motions to Dismiss filed by Adrian Hoke, Tristen Tenney, and Wexford.

## II. <u>Contentions of the Parties</u>

### A. <u>The Complaint</u>

In his complaint, the plaintiff asserts that since 2006, he has suffered repeated infections from Methicillin Resistant Staphylococcus Aurus ("MRSA") which defendants Tenney and Wexford have treated with Doxycline and Rifanpin instead of with Vancomycin. The plaintiff maintains that treatment with Doxycline and Rifanpin was below the degree of care he needed. The plaintiff further maintains that the defendants' delay in providing him proper medical treatment has left him with permanent injuries to his muscles where the flesh has been eaten away, leaving large flesh depressions which give him pain. In his amended complaint, the plaintiff adds as defendants Jane Doe Nurses 1-8. The plaintiff adds as an additional claim, his allegation that he has not "been seen by a doctor covering staph." (Doc. 14, p. 2). The plaintiff further alleges that Jane Doe Nurses have not taken cultures of his infection, and therefore, cannot identify the infection to treat it properly. The plaintiff also alleges that there are about 30 cases of staph infection at HCC, and infected prisoners are not isolated in violation of policy issued by the Division of Corrections. For relief, the plaintiff

indicates in his original complaint that he seeks declaratory relief, injunctive relief, compensatory damages, and punitive damages.

**B.   Warden Hoke's Motion to Dismiss**

In his Motion to Dismiss, Warden Fox asserts that he is entitled to rely on the medical judgment of others.   In addition, he avers that he has not interfered in the plaintiff's medical treatment.   Finally, Warden Hoke asserts the defense of qualified immunity.

**C. Tristan Tenney's Motion to Dismiss**

In support of his motion to dismiss, Mr. Tenney, an R.N., contends that the only specific complaint the plaintiff rases against him is that he failed to prescribe the one antibiotic which the plaintiff believes to be the only appropriate medication to treat his condition.   As an R.N., Mr. Tenney notes that he cannot prescribe medication, and therefore, the complaint fails to state a claim against her.   Moreover, Mr. Tenney asserts that the complaint fails to set forth a proper allegation of deliberate indifference sufficient to state a claim against him.

**D. Wexford Health Sources' Motion to Dismiss**

In support of its motion to dismiss, Wexford asserts that it is not a "person" for the purposes of 42 U.S.C. § 1983.   Moreover, Wexford argues that respondent superior does not apply to a private corporation. Finally, Wexford asserts that the complaint, as it relates to it, must fail because it does not state a claim against Tristan Tenney or any Wexford employee.

### III.   Standard of Review

**A.  Motion to Dismiss**

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses."

Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir.1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir.1993); see also Martin, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require[ ] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' " Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." Conley, 355 U.S. at 45-46. In Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Conley, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," id. (citations omitted), to one that is "plausible on its face," id. at 570, rather than merely "conceivable." Id. Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I.DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir.2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir.2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir.2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in Ashcroft v. Iqbal, where it held that a "claim has facial plausibility when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 129 S.Ct. 1937, 1949 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. <u>Id</u>.

## B. <u>Summary Judgment</u>

Pursuant to Rule 56c of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In applying the standard for summary judgment, the Court must review all the evidence "in the light most favorable to the nonmoving party." <u>Celotex Corp. V. Catrett</u>, 477 U.S. 317, 322-23 (1986). The court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. <u>Anderson v. liberty lobby, Inc.</u>, 477 U.S. 242, 248 *1986).

In <u>Celotex</u>, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. <u>Celotex</u> at 323. Once "the moving party has carried its burden under Rule 56, the opponent must do more than simply show that there is some metaphysical doubt as to material facts." <u>Matsushita Electric Industrial Co. V. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986). The nonmoving party must present specific facts showing the existence of a genuine issue for trial. <u>Id</u>. This means that the "party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but...must set forth specific facts showing that there is a genuine issue for trial." <u>Anderson</u> at 256. The "mere existence of a scintilla of evidence" favoring the nonmoving party

will not prevent the entry of summary judgment. Id. at 248. To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." Id. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. Anderson at 248. Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita at 587 (citation omitted).

## IV. **Analysis**

To state a claim under the Eighth Amendment for ineffective medical assistance, the plaintiff must show that the defendant acted with deliberate indifference to his serious medical needs. Estelle v. Gamble, 429 U.S. 97, 104 (1976). To succeed on an Eighth Amendment cruel and unusual punishment claim, a prisoner must prove: (1) that objectively the deprivation of a basic human need was "sufficiently serious," and (2) that subjectively the prison official acted with a "sufficiently culpable state of mind." Wilson v. Seiter, 501 U.S. 294, 298 (1991).

A serious medical condition is one that has been diagnosed by a physician as mandating treatment or that is so obvious that even a lay person would recognize the need for a doctor's attention. Gaudreault v. Municipality of Salem, Mass., 923 F.2d 203, 208 (1st Cir. 1990), cert. denied, 500 U.S. 956 (1991). A medical condition is also serious if a delay in treatment causes a life-long handicap or permanent loss. Monmouth County Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326,

347 (3rd Cir. 1987), <u>cert. denied</u>, 486 U.S. 1006 (1988).[1]

The subjective component of a cruel and unusual punishment claim is satisfied by showing that the prison official acted with deliberate indifference. <u>Wilson</u>, 501 U.S. at 303. A finding of deliberate indifference requires more than a showing of negligence. <u>Farmer v. Brennan</u>, 511 U.S. 825, 835 (1994). A prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. A prison official is not liable if he "knew the underlying facts but believed (albeit unsoundly) that the risk to which the fact gave rise was insubstantial of nonexistent." *Id.* at 844.

"To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment, [or lack thereof], must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." <u>Miltier v. Beorn</u>, 896 F.2d 848, 851 (4th Cir. 1990). A mere disagreement between the inmate and the prison's medical staff as to the inmate's diagnosis or course of treatment does not support a claim of cruel and unusual punishment unless exceptional circumstances exist. <u>Wright v. Collins</u>, 766 F.2d 841, 849 (4th Cir. 1985). A constitutional violation is established when "government officials show deliberate indifference to those medical needs which have been diagnosed as mandating treatment, conditions which obviously require medical attention, conditions which significantly affect an individual's daily

_____

[1] The following are examples of what does or does not constitute a serious injury. A rotator cuff injury is not a serious medical condition. <u>Webb v. Prison Health Services,</u> 1997 WL 298403 (D. Kansas 1997). A foot condition involving a fracture fragment, bone cyst and degenerative arthritis is not sufficiently serious. <u>Veloz v. New York</u>, 35 F.Supp.2d 305, 312 (S.D.N.Y. 1999). Conversely, a broken jaw is a serious medical condition. <u>Brice v. Virginia Beach Correctional Center</u>, 58 F. 3d 101 (4th Cir. 1995); a detached retina is a serious medical condition. <u>Browning v. Snead</u>, 886 F. Supp. 547 (S.D. W. Va. 1995). And, arthritis is a serious medical condition because the condition causes chronic pain and affects the prisoner's daily activities. <u>Finley v. Trent</u>, 955 F. Supp. 642 (N.D. W.Va. 1997)

life activities, or conditions which cause pain, discomfort or a threat to good health." See Morales Feliciano v. Calderon Serra, 300 F.Supp.2d 321, 341 (D.P.R. 2004) (citing Brock v. Wright, 315 F.3d 158, 162 (2d Cir. 2003)).

### A. **Warden Hoke**

In order to establish personal liability against a defendant in a § 1983 action, the defendant must be personally involved in the alleged wrong(s); liability cannot be predicated solely under *respondeat superior*. See Monell v. Department of Social Services, 436 U.S. 658 (1978); Vinnedge v. Gibbs, 550 F.2d 926, 928 (4th Cir. 1977). The plaintiff does not allege any personal involvement with his medical care by Warden Hoke. Instead, he appears to allege that he is responsible for his staff and their actions. When a supervisor is not personally involved in the alleged wrongdoing, he may be liable under § 1983 if the subordinate acted pursuant to an official policy or custom for which he is responsible, see Fisher v. Washington Metropolitan Area Transit Authority, 690 F.2d 1113 (4th Cir. 1982); Orum v. Haines, 68 F. Supp.2d 726 (D.D. W.Va. 1999), or the following elements are established: "(1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a 'pervasive and unreasonable risk' of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to that knowledge was so inadequate as to show 'deliberate indifference to or tacit authorization of the alleged offensive practices,' and (3) there was an 'affirmative causal link' between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff." Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir.), *cert. denied,* 513 U.S. 813 (1994).

"Establishing a 'pervasive' and 'unreasonable' risk of harm requires evidence that the conduct is widespread, or at least has been used on several different occasions and that the conduct engaged in by the subordinate poses an unreasonable risk of harm or constitutional injury." Id. "A plaintiff may establish deliberate indifference by demonstrating a supervisor's 'continued inaction

in the face of documented widespread abuses.'" Id.

The plaintiff makes no allegations in his complaint which reveals the presence of the required elements for supervisory liability against Warden Hoke. Further, the undersigned notes that the Fourth Circuit has held that non-medical personal may rely on the opinion of medical staff regarding the proper treatment of inmates. Miltier v. Beorn, 896 F.2d 848 (4th Cir. 1990). Thus, Warden Hoke could rely on the decision by medical staff to treat the plaintiff with antibiotics other than Vancomycin. Consequently, the undersigned finds that the plaintiff has failed to state a claim against Warden Hoke,[2] and he should be dismissed as a defendant in this action.

## B. **Tristen Tenney**

As noted in his Motion to Dismiss, Mr. Tenney is a nurse and is not authorized to prescribe antibiotics to treat any infection from which the plaintiff may suffer. Accordingly, the plaintiff's complaint fails to state a claim against Mr. Tennney. Moreover, the exhibits that the plaintiff submitted on April 29, 2010, indicate that although the plaintiff complained of another outbreak of MRSA in October of 2009, and was not seen until November 9, 2009, he was seen by Dr. Proctor and provided antibiotics. Although there was delay in treatment, Mr. Tenney gave the plaintiff a formal apology, and there is nothing in the record to show that this delay was anything other than an oversight.

A fair reading of the plaintiff's complaint indicates that the plaintiff disagrees with the treatment that he has received at the HCC. Although he does not name Dr. Proctor as a defendant,

---

[2]To the extent that the plaintiff may be asserting that Warden Hoke was deliberately indifferent to his needs by denying his administrative grievances, that claim is without merit because that is not the type of personal involvement required to state a claim. See Paige v. Kuprec, 2003 W.L. 23274357 *1 (D.Md. March 31, 2003).

it is clear that Dr. Proctor was his treating physician and is the individual who prescribed Doxycline and Rifanpin rather than Vancomycin, which the plaintiff contends is the appropriate treatment. However, as noted above, a mere disagreement between an inmate and the prison's medical staff as to the inmate's diagnosis or course of treatment does not support a claim of cruel and unusual punishment unless exceptional circumstances exist.  Wright v. Collins, 766 F.2d at 849.  The plaintiff does not allege any exceptional circumstances, nor do any appear to exist.

In addition, to the extent that the plaintiff may be seeking to establish a medical negligence claim, he must comply with West Virginia law and establish that:

> (a) the health care provider failed to exercise that degree of care, skill, and learning required or expected of a reasonable, prudent health care provider in the profession or class to which the health care provider belongs acting in the same or similar circumstances; and (b) such failure was a proximate cause of the injury or death.

W.Va. Code § 55-7B-3.  When a medical negligence claim involves an assessment of whether or not the plaintiff was properly diagnosed and treated and/or whether the health care provider was the proximate cause of the plaintiff's injuries, expert testimony is required.  Banfi v. American Hospital for Rehabilitation, 529 S.E.2d 600, 605-606 (2000).

Additionally, under West Virginia law, certain requirements must be met before a health care provider may be sued.  W.Va. Code §55-7B-6.   This section provides in pertinent part:

**§ 55-7B-6. Prerequisites for filing an action against a health care provider; procedures; sanctions**
(a) Notwithstanding any other provision of this code, no person may file a medical professional liability action against  any health care provider without complying with the provisions of this section.
(b) At least thirty days prior to the filing of a medical professional liability action against a health care provider, the claimant shall serve by certified mail, return receipt requested, a notice of claim on each health care provider the claimant will join in litigation. The notice of claim shall include a statement of the theory or theories of liability upon which a cause of action may be based,

and a list of all health care providers and health care facilities to whom notices of claim are being sent, together with a screening certificate of merit. The screening certificate of merit shall be executed under oath by a health care provider qualified as an expert under the West Virginia rules of evidence and shall state with particularity: (1) The expert's familiarity with the applicable standard of care in issue; (2) the expert's qualifications; (3) the expert's opinion as to how the applicable standard of care was breached; and (4) the expert's opinion as to how the breach of the applicable standard of care resulted in injury or death. A separate screening certificate of merit must be provided for each health care provider against whom a claim is asserted. The person signing the screening certificate of merit shall have no financial interest in the underlying claim, but may participate as an expert witness in any judicial proceeding. Nothing in this subsection may be construed to limit the application of rule 15 of the rules of civil procedure.

This Court previously held that compliance with W.Va. Code §55-7B-6 is mandatory prior to filing suit in federal court. See Stanley v. United States, 321 F.Supp.2d 805, 806-807 (N.D.W.Va. 2004).[3]

With regard to the appropriate standard of care, plaintiff has completely failed to sustain his burden of proof. Plaintiff does not assert, much less establish, the standard of care for the diagnosis or treatment of MRSA. Under the circumstances of this case, plaintiff would be required to produce the medical opinion of a qualified health care provider in order to raise any genuine issue of material fact with respect to the defendant(s)' breach of the duty of care. Moreover, there is nothing in the complaint which reveals that the plaintiff has met the requirements of W.Va. Code §55-7B-6. Accordingly, even if this court has supplemental jurisdiction over the plaintiff's potential state law claims for medical malpractice, summary dismissal is appropriate.

### C. Wexford Medical Sources, Inc.

---

[3] In Stanley, the plaintiff brought suit against the United States alleging that the United States, acting through its employee healthcare providers, was negligent and deviated from the "standards of medical care" causing him injury.

The plaintiff alleges that the defendant(s) have deprived him of his rights and raises a claim under 42 U.S.C. § 1983 which provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

Therefore, in order to state a claim under 42 U.S.C. § 1983, the plaintiff must demonstrate that a person acting under color of state law deprived him of the rights guaranteed by the Constitution or federal laws. Rendall-Baker v. Kohn, 547 U.S. 830, 838 (1982). However, it is clear that Wexford is not a "person" for purposes of 42 U.S.C. § 1983, and is not a proper defendant in this action.

### B. Nurses Jane Doe 1-8

A plaintiff may name "Jane Doe" as a defendant when the identity of a defendant is unknown. Boyd v. Gullet, 64 F.R.D. 169 (D. Md. 1974). However, a district court is not required "to wait indefinitely" for the plaintiff to provide the defendant's true identity to the Court. Glaros v. Perse, 628 F.2d 679, 685 (1st Cir. 1980). The plaintiff has had sufficient time to identify all the defendants in this action. Accordingly, the complaint against the Jane Doe nurses should be dismissed.

## V.  Recommendation

For the reasons stated, the undersigned recommends that Warden Hoke's Motion to Dismiss (Doc. 18), Tristan Tenney's Motion to Dismiss (dckt. 21), and Wexford's Motion to Dismiss (Doc. 34) be **GRANTED**, and that the plaintiff's complaint (dckt. 1) and amended complaint (dckt. 14) be **DISMISSED with prejudice** for failure to state a claim upon which relief can be granted.

Within **fourteen (14) days** after being served with a copy of this Report and Recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the Honorable Robert E. Maxwell, United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to send a copy of this Report and Recommendation to the *pro se* plaintiff by certified mail, return receipt requested, to his last known address as shown on the docket, and to counsel of record via electronic means.

DATED: 10-21-2010

_____
DAVID J. JOEL
UNITED STATES MAGISTRATE JUDGE