IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
ELKINS

**KENNETH MASON,**

      **Plaintiff,**

**v.**                                                                                 **Civil Action No. 2:10-CV-55**
                                                                                            **(Bailey)**

**WEXFORD HEALTH SOURCES, INC.; and
ADRIAN HOKE, Warden,**

      **Defendants.**

## ORDER ADOPTING REPORT AND RECOMMENDATION

### I.  Introduction

On this day, the above-styled matter came before this Court for consideration of the Report and Recommendation of the United States Magistrate Judge David J. Joel [Doc. 106]. Pursuant to this Court's Local Rules, this action was referred to Magistrate Judge Joel for submission of a proposed report and recommendation ("R&R").  Magistrate Judge Joel filed his R&R on December 14, 2011 [Doc. 106].  In that filing, the magistrate judge recommends that Defendant Warden Hoke's Motion for Summary Judgment [Doc. 96] and Defendant Wexford Health Sources, Inc.'s, Motion for Summary Judgment [Doc. 93] be granted, and the plaintiff's complaint [Doc. 1] and amended complaint [Doc. 14] be dismissed with prejudice [Doc. 106 at 25].

Pursuant to 28 U.S.C. § 636(b)(1)(c), this Court is required to make a *de novo* review of those portions of the magistrate judge's findings to which objection is made. However, this Court is not required to review, under a *de novo* or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendation to which no objections are addressed.  **Thomas v. Arn**, 474 U.S. 140,

150 (1985). In addition, failure to file timely objections constitutes a waiver of *de novo* review and the right to appeal this Court's Order. 28 U.S.C. § 636(b)(1); **Snyder v. Ridenour**, 889 F.2d 1363, 1366 (4th Cir. 1989); **United States v. Schronce**, 727 F.2d 91, 94 (4th Cir. 1984). Here, objections to Magistrate Judge Joel's R&R were due within fourteen (14) days of receipt, pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. On January 10, 2012, counsel for the plaintiff filed a Motion to Extend Time to File Objections [Doc. 108], requesting to file objections [Doc. 109] on that date. This Court granted that motion on January 11, 2012; therefore, plaintiff's January 10, 2012, objections [Doc. 109] will be considered timely filed. Accordingly, this Court will review the portions of the R&R to which objection was made under a *de novo* standard of review. The remaining portions of the R&R will be reviewed for clear error.

## II. Factual and Procedural History

Although the plaintiff is now represented by counsel, on April 28, 2010, the plaintiff filed a *pro se* Complaint [Doc. 1] against Wexford Health Sources, Inc. ("Defendant Wexford"), Warden Adrian Hoke ("Defendant Hoke"), and Medical Administrator Tristen Tenney ("Defendant Tenney") [*Id.* at 1]. In his complaint, the plaintiff alleged a § 1983 claim and a medical negligence claim [*Id.* at 3-6]. More specifically, the plaintiff lists the following counts in his Complaint: (1) Missed Diagosis [*sic*] and Failed Medical Treatment and (2) Deliberate Indiferece [*sic*] to Medical Care [*Id.* at 3-6]. He asserts that he has suffered repeated Methicillin-Resistant Staphylococcus Aureus ("MRSA") infections, which the defendants failed to treat properly [*Id.*]. On June 1, 2010, the plaintiff filed a *pro se* Amended Complaint [Doc. 14], which included supplemental factual information as well as listing "Defendant Nurses Jane Doe's [*sic*] 1 through 8" as parties to the proceeding [*Id.* at

2].

An Order to Answer [Doc. 15] was entered by the magistrate judge on June 2, 2010. On June 24, 2010, Defendant Hoke filed a Motion to Dismiss [Doc. 18] and a Memorandum of Law in Support thereof [Doc. 19]. On July 1, 2010, Defendant Tristan Tenney filed a Motion to Dismiss [Doc. 21] and a Memorandum of Law in Support thereof [Doc. 22] on the basis that the plaintiff "failed to allege sufficient facts to support a claim of deliberate indifference to a serious medical need by [Defendant Tenney]" [Doc. 21 at 1]. On September 20, 2010, Defendant Wexford filed a Motion to Dismiss [Doc. 34] and a Memorandum of Law in Support thereof [Doc. 35]. The defendant filed responses to the motions to dismiss [Docs. 27 and 39], and the parties filed replies thereto [Docs. 28, 29, and 41]. Magistrate Judge Joel filed a Report and Recommendation [Doc. 42] on October 21, 2010, which was adopted in part by this Court [Doc. 51] on January 1, 2011. In that order, this Court granted Defendant Tenney's Motion to Dismiss and denied Defendant Hoke's and Defendant Wexford's Motions to Dismiss [*Id.* at 15]. This Court also denied Plaintiff's Motion for Extension of Time to Identify Defendant Nurses Jane Doe 1 through 8 [Doc. 44], which had been filed on October 26, 2010 [Doc. 51 at 15]. The Court addressed some other matters and then remanded the case to the magistrate for further proceedings on the remaining claims [*Id.* at 6].

After a period of discovery, plaintiff was appointed counsel on June 22, 2011 [Doc. 87]. Shortly thereafter, Defendant Wexford filed a Motion for Summary Judgment [Doc. 93] and a Memorandum of Law in Support thereof [Doc. 94] on June 30, 2011; in its motion, Defendant Wexford states that it is entitled to summary judgment because it has "no official policy or custom [that] caused deprivation of federal rights of the plaintiff" [Doc. 93 at 1].

3

On September 16, 2011, the plaintiff filed his response to Defendant Wexford's Motion for Summary Judgment [Doc. 101]. In his response, plaintiff argues that Defendant Wexford is liable as a private person under § 1983 for its violation of the Eighth Amendment based upon its policy or custom that led to its failure to address the Staph epidemic at Huttonsville Correctional Center ("HCC") and the plaintiff's MRSA infection [*Id.* at 7-12]. Defendant Wexford filed a Reply to Plaintiff's Response [Doc. 102] on September 29, 2011, stating that the plaintiff's response "does no more than to restate his original allegations, misstate the true facts[,] and draw incorrect inferences" [*Id.* at 1].

Defendant Hoke filed a Motion for Summary Judgment [Doc. 96] and a Memorandum of Law in Support thereof [Doc. 97] on July 5, 2011. In the motion, Defendant Hoke presents the following arguments: (1) Plaintiff failed to exhaust administrative remedies during incarceration; (2) MRSA at HCC is not so pervasive as to establish a constitutional violation; (3) There is not a laundering policy or custom that resulted in Plaintiff's MRSA infection; (4) HCC has met and exceeded cleanliness and disinfection procedures; (5) The plaintiff has not identified an HCC policy or custom that has caused an unreasonable risk of MRSA infection; and (6) Defendant Hoke is entitled to qualified immunity because he based his decisions on a medical profession's opinion and recommendation [*Id.* at 7-15]. On September 16, 2011, the plaintiff filed his response to Defendant Hoke's Motion for Summary Judgment [Doc. 100]. In his response, the plaintiff states the following arguments: (1) The plaintiff is entitled to commence the § 1983 action because he has exhausted his administrative remedies pursuant to Prisoner Litigation Reform Act ("PLRA"); (2) Defendant Hoke's failure to address the plaintiff's MRSA infection and the Staph epidemic at HCC violates the Eighth Amendment; (3) Defendant Hoke is not

4

subject to qualified immunity because the improper treatment of the plaintiff's MRSA infection violated an established Eighth Amendment right and a reasonable person in the defendant's position would have known that their actions violated the Eighth Amendment [Doc.100 at 8-16]. Defendant Hoke filed a Reply to Plaintiff's Response [Doc. 104] on October 4, 2011. In the reply, Defendant Hoke states that (1) there is no policy prohibiting isolation or denying clean bedding and (2) plaintiff admitted that he failed to grieve the remaining issues in this case [*Id.* at 1-4].

On December 14, 2011, Magistrate Judge Joel filed his Report and Recommendation [Doc. 106], in which he recommends that this Court grant Defendant Wexford's and Defendant Hoke's Motions for Summary Judgment [Docs. 93 and 96, respectively] and dismiss with prejudice the plaintiff's Complaint [Doc. 1] and Amended Complaint [Doc. 14] [*Id.* at 25]. With this Court's approval, Plaintiff filed his Objections to Report and Recommendation [Doc. 109] on January 10, 2012 [*See* January 11, 2012 docket entry].

### III.  Applicable Law

#### A.  Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure governs summary judgment. *See* FED. R. CIV. P. 56. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." **Celotex Corp. v. Catrett**, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(c). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." **Anderson v. Liberty Lobby, Inc.**, 477

U.S. 242, 248 (1986). Thus, the Court must conduct "the threshold inquiry of determining whether there is the need for a trial- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." **Anderson**, 477 U.S. at 250.

The party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." **Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.**, 475 U.S. 574, 586 (1986). That is, once the movant has met its burden to show absence of material fact, the party opposing summary judgment must then come forward with affidavits or other evidence demonstrating there is indeed a genuine issue for trial. Fed. R. Civ. P. 56(c); **Celotex Corp.**, 477 U.S. at 323-25; **Anderson**, 477 U.S. at 248. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." **Anderson**, 477 U.S. at 249 (citations omitted).

### B. Exhaustion of Administrative Remedies

Under the Prison Litigation Reform Act ("PLRA"), before a prisoner can bring an action under any federal law (including 42 U.S.C. § 1983) with respect to prison conditions, he or she must first exhaust all available administrative remedies. 42 U.S.C. § 1997e(a). This exhaustion requirement has multiple purposes. First, it "attempts to eliminate unwarranted federal-court interference with the administration of prisons . . .." **Woodford v. Ngo**, 548 U.S. 81, 93 (2006). Second, it "seeks to 'afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.'" **Id.** (quoting **Porter v. Nussle**, 534 U.S. 516, 525 (2002)). Third, it "'reduce[s] the quantity and improve[s] the quality of prisoner suits.'" **Id.** (quoting **Nussle**, 534 U.S. at 524).

Exhaustion of grievances is mandatory, "whether they involve general circumstances

6

or particular episodes." See **Booth v. Churner**, 532 U.S. 731, 741 (2001). Accordingly, all available administrative remedies, including inmate grievance procedures, must be exhausted before a prisoner can file a complaint in federal court. **Nussle**, 534 U.S. at 524. Failure to properly exhaust all available administrative remedies can result in procedural default of the prisoner's claims. See **Woodford**, 548 U.S. at 92-93 (recognizing that the PLRA provisions contain a procedural default component).

A prisoner filing a § 1983 prison condition complaint does not have to allege exhaustion of administrative remedies in his or her complaint. **Anderson v. XYZ Corr. Health Servs., Inc.**, 407 F.3d 674, 681 (4th Cir. 2005); see also **Jones v. Bock**, 549 U.S. 199 (2007). However, a defendant may raise plaintiff's failure to exhaust administrative remedies as an affirmative defense. **Id.** Furthermore, if the prisoner's failure to exhaust administrative remedies is "apparent from the face of [the] complaint," then the court may summarily dismiss the complaint. **Anderson**, 407 F.3d at 682.

### C. Eighth Amendment Ineffective Medical Assistance Claim

To state a claim under the Eighth Amendment for ineffective medical assistance, the plaintiff must show that the defendant acted with deliberate indifference to his serious medical needs. **Estelle v. Gamble**, 429 U.S. 97, 104 (1976). Such indifference "states a cause of action under § 1983." **Id.** To succeed on an Eighth Amendment cruel and unusual punishment claim, a prisoner must meet an objective and a subjective requirement. **Wilson v. Seiter**, 501 U.S. 294, 298 (1991). Under the objective requirement, the prisoner must show that the deprivation was "sufficiently serious." **Id.** Under the subjective requirement, the prisoner must show that the officials acted with a

"sufficiently culpable state of mind." *Id.*

Under the objective requirement, a medical condition is "sufficiently serious" if it is one that "has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Gaudreault v. Municipality of Salem, Mass.*, 923 F.2d 203, 208 (1st Cir. 1990) (citing *Monmouth County Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987); and *Hendrix v. Faulkner*, 525 F.Supp. 435, 454 (N.D.Ind. 1981)). The seriousness of an inmate's medical need may also be determined by reference to the effect of denying the particular treatment." *Monmouth County Corr. Institutional Inmates*, 834 F.2d at 347.

Under the subjective requirement, the inmate must demonstrate that the prison official acted with "deliberate indifference." *Wilson*, 501 U.S. at 303. Deliberate indifference requires more than negligence. *Farmer v. Brennan*, 511 U.S. 825, 835 (1994) (relying on *Estelle*, 429 U.S. at 104). It requires that "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. A prison official is not liable for deliberate indifference if he or she "did not know of the underlying facts indicating a sufficiently substantial danger" or "knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent." *Id.* at 844.

"To establish that a health care provider's actions constitute deliberate indifference to a serious medial need, the treatment must be so grossly incompetent, inadequate, or

8

excessive as to shock the conscience or to be intolerable to fundamental fairness." ***Miltier v. Beorn***, 896 F.2d 848, 851 (4th Cir. 1990). Unless exceptional circumstances exist, a mere disagreement between the inmate and the prison's medical staff regarding the diagnosis or appropriate course of treatment is not sufficient to support a finding or cruel and unusual punishment under the Eighth Amendment. ***Wright v. Collins***, 766 F.2d 841, 849 (4th Cir. 1985) (citing ***Gittlemacker v. Prasse***, 428 F.2d 1, 6 (3d Cir. 1970)). An Eighth Amendment violation is "established when government officials show deliberate indifference to those medical needs which have been diagnosed as mandating treatment, conditions which obviously require medical attention, conditions which significantly affect an individual's daily life activities, or conditions which cause pain, discomfort or a threat to good health." ***Morales Feliciano v. Calderon Serra***, 300 F.Supp.2d 321 (D.P.R. 2004) (citing ***Brock v. Wright***, 315 F.3d 158, 162 (2nd Cir. 2003); and ***McNally v. Prison Health Servs.***, 28 F.Supp.2d 671, 673-74 (D.Me. 1998)).

Liability cannot be based solely under *respondeat superior*. *See* ***Monell v. Dept. of Soc. Servs. Of City of New York***, 436 U.S. 658 (1978). As such, the defendant must (1) be personally involved in the alleged wrong; (2) be responsible for an official policy or custom under which a subordinate acted; or (3) have knowledge that the subordinate was involved in conduct posing a "pervasive and unreasonable risk" of constitutional injury, showed an inadequate response that amounted to "deliberate indifference" or tacit authorization, and affirmatively caused the particular constitution injury suffered due to that inaction. *See **id.**;* ***Fisher v. Washington Metropolitan Area Transit Auth.***, 690 F.2d 1133 (4th Cir. 1982); ***Orum v. Haines***, 68 F.Supp.2d 726 (N.D. W.Va. 1999); and ***Shaw***

9

*v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994), *cert. denied*, 513 U.S. 813 (1994). A pervasive and unreasonable risk of harm requires a showing that "the conduct is widespread, or at least has been used on several different occasions and that the conduct engaged in by the subordinate poses an unreasonable risk of harm of constitutional injury." *Shaw*, at 799. Deliberate indifference by the supervisor can be demonstrated by "'continued inaction in the face of documented widespread abuses.'" *Id.* (quoting *Slakan v. Porter*, 737 F.2d 368, 373 (4th Cir. 1984).

### D. Medical Negligence

Under West Virginia law, a plaintiff must establish the following:

(1) the health care provider failed to exercise that degree of care, skill, and learning required or expected of a reasonable, prudent health care provider in the profession or class to which the health care provider belongs acting in the same or similar circumstances; and (2) such failure was a proximate cause of the injury or death.

W. Va. Code § 55-7B-3(a). Expert testimony is generally required in medical malpractice cases. *Banfi v. American Hosp. for Rehab.*, 207 W.Va. 135, 529 S.E.2d 600 (W. Va. 2000). Prior to filing an action against a health care provider, a plaintiff must fulfill certain prerequisites, including serving a notice of claim on each health care provider the claimant will join in litigation. *See* W. Va. Code § 55-7B-6. Furthermore, compliance with these pre-filing requirements is mandatory prior to filing suit in federal court. *See **Stanley v. United States***, 321 F.Supp.2d 805, 806-07 (N.D. W.Va. 2004).

## IV. Discussion

For the reasons that follow and the reasons more fully stated in the magistrate judge's R&R, this Court concludes that the magistrate judge's Report and Recommendation should be adopted.

### A. Analysis

In support of his § 1983 and medical negligence claims, Plaintiff alleges the following: (1) the defendants failed to properly treat his repeated MRSA infections; (2) he was never seen by a doctor; (3) the delay in proper medical treatment has caused permanent injuries to his muscles, nerves, veins, and flesh, which still cause him to experience pain; (4) staph is a widespread problem at HCC; (5) prisoners infected with MRSA are not isolated from the other prisoners; and (6) failure to proper launder MRSA-infected inmates' clothing contributed to plaintiff's recurring infections; (7) HCC has a policy of underreporting cases of MRSA infections [Docs. 1 and 14].

#### 1. Defendant Hoke

This Court finds that Defendant Hoke's Motion for Summary Judgment should be granted. First, the plaintiff has failed to allege that Defendant Hoke was personally involved in the alleged wrong. Second, although the plaintiff alleges that Defendant Hoke is responsible for an official policy or custom of underreporting and improperly treating MRSA infections in the prison population, merely alleging that such a policy exists is not sufficient for purposes of summary judgment. **Anderson**, 477 U.S. at 249. Third, the plaintiff failed to show that there is any genuine issue of fact as to whether Defendant Hoke had knowledge that Defendant Wexford was involved in conduct posing a "pervasive and

11

unreasonable risk" of constitutional injury, showed an inadequate response that amounted to "deliberate indifference" or tacit authorization, and affirmatively caused the particular constitutional injury suffered due to that inaction. See **Shaw**, 13 F.3d at 799. Furthermore, non-medical personnel may rely on the opinion of medical staff regarding the proper treatment of inmates. See **Miltier**, 896 F.2d 848.

This Court had previously ruled that the plaintiff, for purposes of a motion to dismiss, had stated a claim against Defendant Hoke on the basis that it was not clear whether the alleged official policy or custom of not isolating infected prisoners was a medical decision or made without reliance on medical advice [Doc. 51 at 11]. However, for purposes of summary judgment, the plaintiff must do more than merely allege something. See **Anderson**, 477 U.S. at 249. The record does not reflect a policy or custom for which Defendant Hoke is responsible that has caused the plaintiff's alleged violation of his constitutional rights. Furthermore, the record does not reflect a widespread epidemic of MRSA at HCC. Accordingly, the plaintiff has failed to demonstrate that there is any genuine issue of material fact with respect to his claim against Defendant Hoke. Accordingly, this Court finds that Defendant Hoke's Motion for Summary Judgment [Doc. 96] should be granted.

2. Defendant Wexford

The plaintiff alleges a § 1983 claim and a medical negligence claim against Defendant Wexford. The Court finds good cause to grant Defendant Wexford's Motion for Summary Judgment on both claims.

a. Section 1983 Claim

Under his § 1983 claim against Defendant Wexford, the plaintiff argues that (1) Defendant Wexford failed to place the plaintiff in isolation or conduct proper laundering services, (2) he was given the wrong antibiotic and not given the necessary decolonization process, and (3) Defendant Wexford's treatment of his recurrent MRSA infection was inadequate.

i. Exhaustion of Administrative Remedies

The plaintiff states that the laundering procedures and failure to isolate him and other MRSA-infected prisoners were part of Defendant Wexford's failure to properly treat his MRSA infections [*See* Docs. 1 and 14]. During discovery, the plaintiff concedes that he did not initiate, let alone exhaust, grievances regarding the laundering or isolation procedures. Furthermore, he makes no suggestion that he was ever prevented from filing any of the required three level of grievances as an excuse for this failure to exhaust his administrative remedies. Moreover, he provides no excuse for such failure. As such, under **Woodford**, these claims must be dismissed for failure to exhaust his administrative remedies. *See* 548 U.S. at 92-93.

ii. Disagreement on Treatment

The plaintiff argues that he should have received a different antibiotic and a decolonization process should have been ordered. However, unless exceptional circumstances exist, a mere disagreement between the inmate and the prison's medical staff regarding the diagnosis or appropriate course of treatment is not sufficient to support a finding of cruel and unusual punishment under the Eighth Amendment for purposes if his

13

§ 1983 claim. ***Wright***, 766 F.2d at 849 (citing ***Gittlemacker***, 428 F.2d at 6). The plaintiff has failed to show any such exceptional circumstance. As such, an allegation of a difference in opinion regarding the proper medical treatment between the inmate and the medical personnel does not sufficiently support the plaintiff's claim on this issue.

### iii. Inadequate Treatment

Although this Court disagrees with the magistrate judge's conclusion that Defendant Wexford is not a state actor or "person" under § 1983, this Court does agree that Defendant Wexford is not liable under § 1983. *See* ***West v. Atkins***, 487 U.S. 42, 54 (1988)(holding that a private entity that contracts with the state to provide medical services to state prison inmates acts "under color of state law"). For purposes of § 1983, Defendant Wexford can be liable if "an official policy or custom of the corporation causes the alleged deprivation of federal rights." ***Rendall-Baker v. Kohn***, 457 U.S. 830, 838 (1982); *see also* ***Page v. Kirby***, 314 F.Supp.2d 619, 622 (N.D. W.Va. 2004) (citing ***Austin v. Paramount Parks, Inc.***, 195 F.3d 715, 728 (4th Cir.1999)). As such, if the policy or custom of not isolating MRSA-infected inmates and not segregating their bedding and clothing from other uninfected inmates is based upon the medical advice of Defendant Wexford, then Defendant Wexford will be liable under the plaintiff's § 1983 claim.

Defendant Wexford contends that the plaintiff never required isolation during its treatment of the plaintiff because he had no draining lesions that could not be covered with a dressing or Band Aid and that separate laundering is not required. When such dressings are sufficient, the Clinical Practice Guidelines regarding MRSA management do not call for single-celling inmates with these types of lesions. Furthermore, Wexford's Infection Control

Manual does not include a special mandate for washing the laundry of MRSA-infected inmates. Although Defendant Wexford has some policies regarding MRSA-infected inmates, the plaintiff has failed to demonstrate that there is a policy to refuse to isolate a patient where is it medically necessary to do so.

Furthermore, the plaintiff has not demonstrated a causal link between not being placed in isolation or not have laundry segregated and his MRSA infections. The plaintiff must show both (1) official policies and (2) a causal link for Defendant Wexford to be liable under a § 1983 claim. In this case, the plaintiff experienced his first MRSA infection in October 2006; however, Defendant Wexford did not begin providing medical services at HCC until May 2008. As such, plaintiff cannot demonstrate a causal link between his first MRSA infection and Defendant Wexford's policies or customs. Furthermore, the plaintiff cannot establish such a causal link to those MRSA infections that he experienced while Defendant Wexford was providing medical treatment to inmates at HCC. Because the plaintiff has failed to show that Defendant Wexford had an official policy that caused the alleged constitutional violation, Defendant Wexford cannot be found liable under § 1983.

### b. Medical Negligence

The plaintiff asserts that Defendant Wexford missed his diagnosis, provided improper medical treatment, and delayed his proper treatment. The plaintiff also contends that he was not given the most appropriate antibiotic for his condition and that Defendant Wexford failed to provide him with special decolonization treatment to remove the MRSA infection from his body. However, plaintiff has failed to assert, let alone establish, the standard of care for the diagnosis or treatment of MRSA. As such, the plaintiff has not

raised any genuine issue of material fact with respect to Defendant Wexford's breach of its duty of care. Furthermore, the plaintiff has failed to meet the pre-filing requirements under W. Va. Code § 55-7B-6. Accordingly, summary dismissal of the medical negligence claim against Defendant Wexford is appropriate.

### B.  Plaintiff's Objections

Plaintiff raises four objections to the Magistrate Judge's conclusions that the complaint [Doc. 1] and amended complaint [Doc. 14] should be dismissed with prejudice for failure to state a claim upon which relief can be granted and that Defendant Warden Hoke's Motion for Summary Judgment [Doc. 96] and Wexford's Motion for Summary Judgment [Doc. 93] should be granted.

#### 1. General Grievance

The plaintiff objects to the magistrate judge's conclusion that PLRA was not satisfied because the plaintiff failed to specifically identify improper laundry service; the plaintiff states that, although "the laundry practices was not specifically identified, the general grievance was intended to encompass not only the improper laundry practices, but also a myriad of other issues with respect to HCC's treatment of Plaintiff's reoccurring MRSA infections" [Doc. 109 at 1]. However, as noted above, one of the purposes of the PLRA is to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Nussle*, 534 U.S. at 525. As such, upholding the plaintiff's requirement to properly exhaust his administrative remedies prior to filing the instant federal complaint furthers this purpose of the PLRA. As such, this Court hereby OVERRULES the plaintiff's objection on this issue.

16

2. Deliberate Indifference

The plaintiff states that the R&R's "finding that Defendant Hoke could not be deliberately indifferent ignores the unstated custom at HCC implemented by Defendant Hoke - which is that MRSA cases, such as the one afflicting the Plaintiff, are to be ignored in an effort to avoid the expense of proper treatment and to avoid reporting the actual number of inmates infected" [Doc. 109 at 2]. The plaintiff further states that Defendant Hoke should not be permitted to escape liability based upon reliance on medical personnel's judgment [*Id.*]. Although finding Defendant Hoke deliberately indifferent is a necessary requirement for finding him liable under certain theories of liability, it is not a sufficient one. Even if this Court found that Defendant Hoke was deliberately ignorant, the plaintiff must still meet the other requirements for liability. For purposes of supervisor liability, the plaintiff would also have to show that Defendant Hoke (1) had knowledge that Defendant Wexford was involved in conduct posing a "pervasive and unreasonable risk" of constitutional injury and (2) affirmatively caused the particular constitutional injury suffered due to that inaction. Because the plaintiff has failed to demonstrate that there is a genuine issue as to these other requirements, the objection on this issue is hereby OVERRULED.

3. Defendant Wexford as a "Person"

The plaintiff objects to the finding that Defendant Wexford did not violate his constitutional rights pursuant to § 1983 [Doc. 109 at 2]. The plaintiff states that Defendant Wexford should be considered a state actor given its contract with the state to perform services for the state [*Id.*]. The plaintiff further states that Defendant Wexford's "custom or

17

policy of improperly treating the Plaintiff's deadly MRSA infection . . . deprived the Plaintiff of his Eighth Amendment right" by amounting to deliberate indifference and making death a "distinct possibility" [*Id.*].  However, as previously discussed, it is not sufficient to merely find Defendant Wexford to be a state actor or person under § 1983 for such a claim to proceed; the plaintiff must demonstrate both a policy or custom and a causal link from that policy or custom to the plaintiff's MRSA infection.  Because such a policy and causal link has not been demonstrated, plaintiff has failed to meet a necessary requirement for finding Defendant Wexford liable under § 1983.  Therefore, this Court hereby OVERRULES the plaintiff's objection on this issue.

### 4. Medical Professional Liability Act Requirements

The plaintiff "objects to the finding that his claim against Defendant Wexford was based on medical negligence" [Doc. 109 at 3].  The plaintiff states that his claim is a § 1983 action and is "based on Defendant Wexford's violation of the Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment," meaning that he does not need "to comply with the administrative requirements of the Medical Professional Liability Act (MPLA)" [*Id.*].  However, this Court notes that plaintiff's complaint lists both a § 1983 claim and a state law tort (medical negligence) claim [*See* Doc. 1].  Furthermore, the plaintiff's amended complaint merely provides supplemental information and does not remove any claims from the original complaint [*See* Doc. 14].  As such, this Court finds that the plaintiff did allege a medical negligence claim in addition to the § 1983 claim and, therefore, OVERRULES this objection to the extent that it is applicable to his medical negligence claim.

Because there is no evidence on which a reasonable jury could return a verdict for any of the plaintiff's claims against Defendant Hoke or Defendant Wexford, no genuine issue of material fact exists. See **Anderson**, 477 U.S. at 248. Accordingly, this Court finds that Defendant Hoke's and Defendant Wexford's motions for summary judgment [Docs. 96 and 93] should be granted.

### V. Conclusion

Upon careful review of the report and recommendation, it is the opinion of this Court that the magistrate judge's Report and Recommendation **[Doc. 106]** should be, and is, hereby **ORDERED ADOPTED** for the reasons more fully stated in the magistrate judge's report. Further, the plaintiff's Objections **[Doc. 109]** are **OVERRULED**. Accordingly, the Motion of Defendant Wexford Health Sources, Inc. For Summary Judgment **[Doc. 93]** and Defendant Warden Adrian Hoke's Motion for Summary Judgment **[Doc. 96]** are hereby **GRANTED** and plaintiff's Complaint **[Doc. 1]** and Amended Complaint **[Doc. 14]** are hereby **DISMISSED WITH PREJUDICE**, and **ORDERED STRICKEN** from the active docket of this Court. The Clerk is directed to enter a separate judgment in favor of the defendants.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to any counsel of record.

**DATED**: January 20, 2012.

JOHN PRESTON BAILEY
CHIEF UNITED STATES DISTRICT JUDGE